# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.W. and J.P.**

**No. 17-0717** (Gilmer County 16-JA-18 and 19)

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.P., by counsel Todd W. Reed, appeals the Circuit Court of Gilmer County's July 17, 2017, order terminating his parental rights to A.W. and J.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that petitioner sexually propositioned A.W., determining that A.W. was a victim before all evidence had been submitted, allowing the guardian to file an amended petition, and terminating petitioner's parental rights based upon insufficient evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition against petitioner in August of 2016, alleging that A.W. and J.P. were abused and neglected. Specifically, the DHHR alleged that A.W., nearly sixteen years old at the time, reported to the DHHR and West Virginia State Police that petitioner, her grandfather and legal guardian, had been propositioning her for sex over the last few months. A.W. reported that the propositions often occurred while petitioner was intoxicated and always while they were alone. The DHHR further alleged that petitioner and J.P.'s mother engaged in domestic violence, including an incident wherein J.P.'s mother picked up a kitchen knife, threatened to kill herself, petitioner, and J.P., and intended to frame petitioner for the murders.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

The circuit court held three adjudicatory hearings over the course of September of 2016 and October of 2016. The circuit court heard the testimony of several witnesses, including A.W., who testified that petitioner propositioned her for sex on a nearly weekly basis for approximately one month. A.W. testified that when she refused, petitioner would request that she bring her friends over to the home so that he could proposition them instead. The propositions usually occurred when petitioner was drunk and never occurred when other people were nearby. A.W. also testified that she had not liked living with petitioner since she was placed there in 2015 and sometimes fought with petitioner and his two girlfriends. A.W. never observed anyone in the home to be physically violent. Petitioner then testified and denied that he had ever propositioned A.W. for sex. Petitioner testified that A.W. had behavioral problems and that they often fought. Petitioner stated that a few nights before A.W. reported the allegations of abuse, they had fought and he told her he was going to place her in a program such as Mountaineer Challenge Academy. Petitioner admitted to drinking two to three beers a day but did not believe he was impaired by them. After hearing evidence, the circuit court found A.W.'s testimony to be credible and adjudicated petitioner as an abusing parent based upon his inappropriate conduct with the child by propositioning her for sex.

In November of 2016, the circuit court held a status hearing wherein the guardian moved to file an amended petition. Over petitioner's objection, the circuit court granted the guardian leave to file an amended petition, which included allegations that petitioner and his girlfriends engaged in domestic violence several times throughout 2005, 2006, and 2014.

The circuit court held two adjudicatory hearings on the amended petition throughout January of 2017 and February of 2017. One of petitioner's girlfriends testified that all of her former allegations of domestic violence against petitioner were false. The circuit court did not adjudicate petitioner based upon any allegations contained in the new petition.

The circuit court held a dispositional hearing in April 2017, during which petitioner requested an improvement period. Witnesses testified that petitioner complied with services such as parenting classes and supervised visitation with J.P., and appeared to have a strong bond with the child. Petitioner testified that he tested positive for alcohol twice but that he would fully comply with any requirements set forth by the circuit court, including staying away from his girlfriends. The circuit court continued the hearing, which was reconvened in June of 2017. At that hearing, petitioner admitted that he tested positive for alcohol sixteen times throughout the proceedings. Despite being prohibited from contacting his girlfriends, pictures submitted by the DHHR showed petitioner's vehicle in J.P.'s mother's driveway. The DHHR also submitted evidence indicating that petitioner and J.P.'s mother had contact or engaged in domestic violence four times in May and June of 2017. Petitioner testified that the police reports were untrue, stating he only went to J.P.'s mother's home two times in order to retrieve personal items. However, a Child Protective Services ("CPS") worker testified that J.P.'s mother called the DHHR requesting assistance in submitting documentation to law enforcement because petitioner continued to contact her. The CPS worker testified that the DHHR recommended termination of petitioner's parental rights due to continued instances of domestic violence and his inability to abstain from alcohol when ordered to do so, which led to the suspension of supervised visitation. After visitation was suspended, petitioner failed to provide any alcohol screens.

After hearing evidence, the circuit court found that petitioner had not complied with its orders from the initiation of the matter, continued to consume alcohol despite orders to remain alcohol free, remained in contact with J.P.'s mother, and continued to engage in domestic violence, including four times throughout May of 2017 and June of 2017. The circuit court denied petitioner's request for an improvement period and terminated his parental rights based upon findings that termination was in the children's best interests.[2] It is from the July 17, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues on appeal that the circuit court erred in finding that he propositioned A.W. for sex. According to petitioner, the circuit court was presented with ample evidence demonstrating that A.W. was not a credible witness and had motive for accusing petitioner. We find petitioner's argument meritless. We have previously held "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Based on a review of the record, we find no error in the circuit court's credibility determination regarding A.W. The circuit court was presented evidence of inconsistencies in A.W.'s story, as well as the testimony of both petitioner and A.W. As the trier of fact, the circuit court weighed the evidence and ultimately found that A.W. was a credible witness and that petitioner had propositioned her for sex. Accordingly, this Court will rely on the assessment of witness credibility made by the circuit court below and finds that petitioner is entitled to no relief in this regard.

---

[2]A.W.'s mother's parental rights were terminated in 2006 and her father is deceased. J.P.'s mother voluntarily relinquished her parental rights during the proceedings below. According to the guardian, the children are in a relative placement with a permanency plan of adoption into that home.

Petitioner next argues that the circuit court erred in determining that A.W. was a victim before the closure of evidence during the adjudicatory hearing.[3] Petitioner argues that at least two times before the end of the adjudicatory hearing, the circuit court referred to A.W. as a victim, demonstrating that it predetermined that she was a victim of abuse before the close of evidence. Petitioner maintains that pursuant to West Virginia Code § 49-4-601(i), it is the circuit court's obligation to make a determination at the conclusion of the adjudicatory hearing based upon clear and convincing evidence. This Court finds petitioner's argument unpersuasive. As previously mentioned, this Court determined that the evidence presented at the adjudicatory hearing on the initial petition was sufficient to adjudicate petitioner as an abusing parent and we decline to disrupt the circuit court's finding that A.W. was a credible witness. In light of the sufficient evidence presented, we fail to see how the circuit court twice calling A.W. a victim before the closure of evidence at the adjudicatory hearing prejudiced petitioner in any way. Accordingly, we find no error.

Petitioner also argues on appeal that the circuit court erred in permitting the guardian to file an amended petition when no new evidence was included as required by the Rule 19 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. Rule 19(b) states that "[i]f *new* allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition . . . and the final adjudicatory hearing shall be re-opened for the purpose of hearing evidence on the new allegations in the amended petition." (emphasis added). According to petitioner, no new information was contained in the amended petition as the allegations surrounded instances of domestic violence that occurred in 2005, 2006, and 2014. Further, petitioner argues that these allegations were not based upon conditions existing at the time of the filing of the petition, as required by West Virginia Code § 49-4-601(i). As this Court has recognized, "[m]ost errors, including constitutional ones are subject to harmless error analysis." *State ex rel. Waldron v. Scott*, 222 W.Va. 122, 126, 663 S.E.2d 576, 580 (2008) (internal quotations and citation omitted). Here, assuming that the circuit court committed an error for the purpose of petitioner's argument, it is clear that the alleged error was harmless as the circuit court did not adjudicate petitioner based upon the amended petition. Accordingly, we find that petitioner was not prejudiced by the filing of an amended petition and, therefore, is entitled to no relief in this regard.

---

[3]In support of his argument, petitioner also alleges that the circuit court denied his request for additional discovery, compelled the testimony of another respondent at the adjudicatory hearing on the amended petition, and incorrectly considered alleged instances of domestic violence which occurred several years before the filing of the petition. However, petitioner's arguments are tangentially related, at best. At no point in his argument does petitioner sufficiently explain how these alleged procedural errors demonstrate that he was prejudiced by the circuit court referring to A.W. as a victim before the close of evidence at the adjudicatory hearing. In an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, then-Chief Justice Menis E. Ketchum specifically noted in paragraph two that "[b]riefs that . . . fail to structure an argument applying applicable law [or] fail to raise any meaningful argument that there is error" are not in compliance with this Court's rules. Accordingly, we decline to address the unstructured sub-arguments that petitioner failed to adequately connect to his assignment of error.

Finally, petitioner argues that the circuit court erred in terminating his parental rights based upon insufficient evidence. Specifically, petitioner argues that although he tested positive for alcohol against court orders at least sixteen times throughout the proceedings below, no evidence was presented that his parenting skills were impaired due to alcohol consumption. Further, petitioner argues that there was insufficient evidence presented that he engaged in domestic violence throughout May of 2017 and June of 2017. Petitioner's argument is unpersuasive. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner's argument regarding the sufficiency of the evidence is not supported by the record and ignores the issue at hand. Per the circuit court's order, petitioner was prohibited from consuming alcohol, ordered to participate in alcohol screens, and prohibited from contacting either of his girlfriends. However, petitioner failed to comply with these conditions. By his own admission, petitioner continued to consume alcohol throughout the proceedings below and tested positive for alcohol sixteen times. Testimony at the dispositional hearing established that petitioner failed to comply with this order because he did not believe that he had a problem with alcohol or that he needed to stop drinking. Further, the record indicates that petitioner or members of his family went to J.P.'s mother's house four times throughout May of 2017 and June of 2017. While petitioner attempts to argue that these instances do not meet the definition of domestic violence, the fact remains that petitioner was ordered not to have contact with J.P.'s mother and she was forced to contact law enforcement officers multiple times due to petitioner's continued unwanted presence at her apartment. Petitioner's continued alcohol consumption and contact with J.P.'s mother occurred despite having been provided with services such as parenting classes and alcohol screens. As such, petitioner did not follow through with rehabilitative efforts designed to reduce or prevent further abuse and neglect. We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence outlined above, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the children's welfare. Therefore, the circuit court did not err in terminating petitioner's parental rights.

       For the foregoing reasons, we find no error in the decision of the circuit court, and its July 17, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  March 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker