663 S.E.2d 576

STATE of West Virginia EX. REL.
James Blaine WALDRON, Pe-
titioner Below, Appellant

v.

Tom SCOTT, Southwestern Regional Jail
Administrator, Jim Rubenstein, Com-
missioner, and West Virginia Division of
Corrections, Respondents Below, Appel-
lee.

No. 33434.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 22, 2008.

Decided March 18, 2008.

Jason R. Grubb, Esq., Beaver, WV, for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara H. Allen, Esq., Managing Deputy Attorney General, Charleston, WV, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of McDowell County entered on September 25, 2006. In that order, the circuit court denied a petition for a writ of habeas corpus filed by James Blaine Waldron (hereinafter "the appellant"). In this appeal, the appellant contends that the circuit court erred by failing to hold an evidentiary hearing prior to denying him habeas corpus relief. In 2004, the appellant was convicted of voluntary manslaughter and sentenced to seven years in the penitentiary. On September 30, 2004, upon a finding that the appellant was a recidivist offender based on his prior felony convictions, the circuit court sentenced him to an additional five years, for a total confinement of twelve years. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, we are of the opinion that the circuit court did not commit reversible error and, accordingly, affirm the decision below.

# I.

## FACTS

The facts relating to the appellant's conviction for voluntary manslaughter concern, in large part, his co-defendant, Mose Douglas Mullins, Jr. (hereinafter, "Mr. Mullins"). While Mr. Mullins' criminal actions are not at issue before this Court in this proceeding, he will be discussed to the extent necessary to understand the circumstances surrounding the appellant's conviction.

Mr. Mullins testified that he was a drug addict and that he sold drugs, but that he used more of the drugs than he sold. As a result, he became indebted to a third party for the remainder of the money due for a large quantity of OxyContin pills. As such, Mr. Mullins worked out a deal with the third party whereby he agreed to kill four people, who had allegedly broken into the third party's home, in exchange for forgiveness of the debt. The third party also agreed to give Mr. Mullins $5,000 for each murder, for a total of $20,000.

On May 13, 2001, Mr. Mullins decided to go through with the four killings. Later that day, Mr. Mullins and the appellant were riding in Mr. Mullins' vehicle. Soon thereafter, they ran into Jeffrey Mullins, Don Ball, and Chantel Webb. Jeffrey Mullins and Chantel Webb were two of the people Mr. Mullins was planning to kill. Mr. Mullins offered OxyContin pills to these individuals and made plans to meet at a secluded location to complete the transaction. As the two groups drove in separate cars to meet at the location, Mr. Mullins claims that he then told the appellant of his plan to kill the individuals and the appellant agreed to be a look-out for the sum of $1,000. Conversely, the appellant contends that he did not know of Mr. Mullins' plan to kill anyone. Mr. Mullins then retrieved a gun that had been provided by the third party and shot Chantel Webb, Don Ball, and Jeffrey Mullins. Mr. Ball fled the scene with five gunshot wounds and eventually recovered. Jeffrey Mullins was shot and left for dead, but survived and remains paralyzed as a result of his injuries. Ms. Webb, however, was killed at the scene.

The appellant stated that he remained in the car the entire time and that he did not pay attention to the gunshots being fired because he was breaking up marijuana to roll a joint. Mr. Ball, however, testified that he remembers seeing the appellant out of the car during the shootings, while Jeffrey Mullins testified that prior to being shot, he heard Mr. Mullins ask the appellant if everything was okay, followed by the appellant responding in the affirmative.

Following the shootings, Mr. Mullins threw the bodies of Ms. Webb and Jeffrey Mullins over an embankment, and he and the appellant rode to a carwash where Mr. Mullins removed blood stains from the vehicle. The two men then disposed of the murder weapon and Mr. Mullins' blood-stained clothing. Next, Mr. Mullins drove them to a relative's house, to a convenience store, and then to their respective homes, which were located beside each other. When they arrived home, the police were waiting for them and they were both arrested.

The appellant was incarcerated from the time of his arrest until approximately three months later when he agreed to assist law enforcement officers in their investigation in exchange for leniency. The appellant directed police to the location of evidence such as the murder weapon and Mr. Mullins' bloody clothing. He also submitted to a blood test and gave a voluntary statement. For his assistance in recovering evidence, the State entered into a plea agreement whereby the felony indictment against the appellant was dismissed and the State agreed to allow the appellant to enter a voluntary plea of guilty to the misdemeanor charge of accessory after-the-fact and to recommend a period of one-year confinement in the regional jail, a fine of $250., and all court costs.

On February 6, 2003, the circuit court refused to accept the appellant's plea agreement. Thereafter, upon realizing that he had a close personal relationship with a member of the victim's family, that circuit judge transferred the case to another circuit judge. On March 3, 2003, the plea agreement was presented to the second circuit judge who also refused to accept it, stating that he would only entertain a felony plea.

The case then proceeded to trial and the appellant was convicted of voluntary manslaughter.

Thereafter, this Court granted the appellant's petition for appeal and, subsequently, on November 30, 2005, affirmed his convictions. *See State v. Waldron*, 218 W.Va. 450, 624 S.E.2d 887 (2005). On March 10, 2006, the appellant filed a *pro se* petition for a writ of habeas corpus wherein he requested the appointment of counsel. On April 19, 2006, the appellant was appointed counsel who amended the appellant's *pro se* petition. The appellant raised six issues in his petition for habeas relief. On September 25, 2006, the circuit court entered an order denying habeas corpus relief. This appeal followed.

## II.

## STANDARD OF REVIEW

 The appellant maintains that the circuit court erred by failing to hold an evidentiary hearing prior to denying him habeas corpus relief. In Syllabus Point 1 of *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975), we held that "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Generally applicable is our standard for conducting review of circuit court decisions, as restated in *Phillips v. Fox*, 193 W.Va. 657, 458 S.E.2d 327 (1995):

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Id.* at 661, 458 S.E.2d at 331 (citing *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995)). With these standards in mind, we proceed to review the trial court's rulings on the issue of habeas corpus relief to determine if any error was committed.

## III.

## DISCUSSION

The appellant argues that the circuit court erred by not conducting an evidentiary hearing upon his petition for a writ of habeas corpus, or, in the alternative, explaining in its order why an evidentiary hearing was not required. The appellant points out that Rule 9(a) of the West Virginia Rules Governing Post–Conviction Habeas Corpus Proceedings provides:

Determination by court.—If the petition is not dismissed at a previous stage in the proceeding, the circuit court, after the answer is filed, shall, upon a review of the record, if any, determine whether an evidentiary hearing is required. If the court determines that an evidentiary hearing is not required, the court shall include in its final order specific findings of fact and conclusions of law as to why an evidentiary hearing was not required.

The appellant states that he was not afforded the evidentiary hearing, and the circuit court's order denying said relief lacked "specific findings of fact and conclusions of law as to why an evidentiary hearing was not required" in violation of Rule 9.

Conversely, the State contends that given the facts and circumstances of this case, the appellant was not entitled to a hearing on the issues raised in his petition for writ of habeas corpus. The State notes that four of the six issues in the appellant's Amended Petition for Writ of Habeas Corpus have been previously adjudicated on the merits by this Court in *State v. Waldron*, 218 W.Va. 450, 624 S.E.2d 887 (2005). Moreover, since there have been no subsequent decisions which, if deemed retroactive and applied to the issues in *Waldron*, could lead to a different result, the four issues are *res judicata* and required no hearing. With respect to the other two issues, the allegation that the State knowingly used perjured testimony and the appellant received ineffective assistance of counsel, the State also maintains that as a matter of law no hearing was required.

 Upon review of the final order, it is clear that the circuit court concluded that an evidentiary hearing on the appellant's habeas

petition was not necessary. The circuit court issued a lengthy order meticulously addressing each of the six issues raised by the appellant and explaining in detail why the alleged errors were without merit. To the extent that the court erred by failing to specifically state in its order that an evidentiary hearing was not required, this Court has acknowledged that, "[m]ost errors, including constitutional ones are subject to harmless error analysis." *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Likewise, this Court has held that: " ' "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. pt. 5, *State ex rel. Grob v. Bailey [Blair]*, 158 W.Va. 647, 214 S.E.2d 330 (1975).' Syllabus Point 1, *Maxey v. Bordenkircher*, [175] W.Va. [49], 330 S.E.2d 859 (1985)." Syllabus Point 3, *State v. Barrow*, 178 W.Va. 406, 359 S.E.2d 844 (1987). In this case, the circuit court addressed and disposed of each issue set forth in the appellant's habeas petition in such an exhaustive manner that there is no question as to why the appellant was denied an evidentiary hearing.

■ The circuit court found that the first four issues raised in the appellant's habeas petition had been addressed by this Court in the appellant's direct appeal. In *Waldron*, this Court rejected the appellant's arguments concerning: unfulfilled plea bargains; refusal to turn over witness notes after a witness had testified; constitutional errors in evidentiary rulings (specifically, gruesome photographs); and instructions to the jury (specifically, the modified *Allen*[1] charge). In Syllabus Point 1 from *Bowman v. Leverette*, 169 W.Va. 589, 289 S.E.2d 435 (1982), we held,

> W.Va.Code, 53–4A–1(d) [1967] allows a petition for post-conviction habeas corpus relief to advance contentions or grounds which have been previously adjudicated only if those contentions or grounds are based upon subsequent court decisions which impose new substantive or procedur-

al standards in criminal proceedings that are intended to be applied retroactively.

In the case at hand, the appellant made the same arguments in his habeas petition as he did in his direct appeal. Moreover, the appellant did not present any contentions or grounds for the reversal of his conviction based upon subsequent decisions by this Court as required by *Bowman*. Thus, these issues raised by the appellant lacked merit and no evidentiary hearing was required.

■ The next issue raised in the appellant's petition concerned his allegation that the State had knowingly used perjured testimony against him during trial. The circuit court noted in its order:

> In his Amended Petition for Writ of Habeas Corpus, Waldron asserts that the State knowingly used Mose Douglas Mullins's perjured testimony about the one thousand dollars ($1,000.00) that he allegedly gave to Waldron in exchange for Waldron participating in the commission of the crime: being on the lookout for traffic while Mose Mullins shot three people. G. Todd Houck, a special prosecutor, responds that there is no fact or evidence in the record to substantiate this allegation. Indeed, Waldron's assertion that the State knowingly used perjured testimony is without merit because during his testimony Mose Mullins willingly admitted that while he offered the $1,000.00 to Waldron, he did not give it to him. Trial Transcript, Volume III, page 398. In fact, Mose Mullins conceded that the $1,000.00 was recovered from his person by the police and given to his wife, Pamela Mullins. Id.
>
> Moreover, Waldron alleges that while Mullins failed to implicate Waldron in the commission of the crimes on numerous prior occasions, he testified at trial that the petitioner was fully aware of the crimes and willingly participated in them. This allegation is also without merit because while Mose Mullins described Waldron's actions, he nevertheless kept repeating that "Rusty [Waldron] did not do any-

---

**1.** *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The *Allen* charge, in its modified form, was approved by this Court in

*State v. Blessing*, 175 W.Va. 132, 331 S.E.2d 863 (1985).

thing.[2] Id. at 403–404. Moreover, prior to taking a guilty plea, Mullins wrote a letter to the Probation Department detailing everything that happened on the day of the crime. Id. at 407. Specifically, Mullins wrote that when he placed the gun between himself and Waldron in the car, Waldron asked him if he was going to kill Don Ball, too. Id. at 407–408. Accordingly, based on the foregoing, Waldron's assertion about Mose Mullins's testimony being untruthful is without merit.

█ The appellant's petition contains no supporting facts whatsoever, just a scant and bare allegation without any legal analysis. The case law is clear that prior inconsistent statements are a matter for cross examination and impeachment. *See, e.g., State v. James Edward S.*, 184 W.Va. 408, 400 S.E.2d 843 (1990); *State v. Wood*, 194 W.Va. 525, 460 S.E.2d 771 (1995); *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996); and W.Va. R. Evid. 613.[3] In this case, however, Mr. Mullins' statements were consistent both before and during the appellant's trial. Moreover, Mr. Mullins was subjected to extensive cross examination which covered nearly one hundred pages in the record. Thus, the jury heard all of the evidence concerning Mr. Mullins' prior statements and concluded that the State had proved its case against the appellant beyond a reasonable doubt. Accordingly, there was no merit to the appellant's argument and an evidentiary hearing was not required.

█ The final issue raised by the appellant in his habeas petition was ineffective assistance of counsel. In Syllabus Point 5, of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), this Court provided: "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Moreover, as stated in Syllabus Point 6 of *Miller*:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*See* Syllabus Points 1 and 2, *Ronnie R. v. Trent*, 194 W.Va. 364, 460 S.E.2d 499 (1995).

The circuit court explained in its order denying the appellant habeas relief that "the special Prosecutor indicates in his Return On Writ Of Habeas Corpus that there is no fact or evidence contained in the record that would substantiate ineffective assistance of

---

**2.** This exchange occurred during re-direct testimony of Mr. Mullins:

Q. Is it your opinion, sir, that, if you don't actually pull the gun—pull the gun out and shoot the trigger—pull the trigger that you didn't do anything wrong?
A. I don't think you should be charged with murder if you didn't kill someone, no.
Q. So, if you know about murder and act as a lookout, you shouldn't be charged with murder?
A. The way I—no.
. . .
A. I can't—I can't lay the blame on him [Waldron]. I can't say that he should share the same thing that I do.

**3.** West Virginia Rule of Evidence 613 provides:

(a) Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

counsel allegation." The circuit court then addressed the appellant's contentions of counsel error which were: that his counsel failed to adequately protect his interests during plea negotiations; that counsel failed to make timely objections as to notes being taken by the father of a prosecution witness; that counsel failed to object to the modified *Allen* charge given to the jury; and that counsel did not attend meetings where the appellant, pursuant to his plea agreement (later rejected by the circuit court), gave information about the location of evidence. The circuit court explained:

> However, these acts or omissions to act on the part of Mr. Mullins can be viewed as trial tactics taken by a professional attorney. Nevertheless, because the *Strickland* test is twofold, even if Waldron could prove serious errors taken by his counsel, he still has the burden to "affirmatively" show prejudice: the existence of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. In other words, Waldron has to prove that had it not been for the errors committed by Mr. Mullins, the outcome of the trial would have been in his favor, thus planting reasonable doubt in the minds of the decision-makers regarding his guilt in the commission of voluntary manslaughter.

The circuit court further expounded:

> Ultimately, the inquiry then becomes whether there is "a reasonable probability" that the jury would have acquitted Waldron but for the errors of Mr. Mullins. The answer to that question would be negative according to the two-prong *Strickland* test because even if Mr. Mullins's errors were so serious as to satisfy the first prong of the *Strickland* test, these errors did not prejudice Waldron in denying him a fair trial. In fact, the State had enough evidence to prove Waldron's guilt in the voluntary manslaughter beyond a reasonable doubt, and no reasonable probability existed for the jury to find in his favor, but for errors of his defense counsel.

The circuit court then discussed the overwhelming evidence pointing toward the appellant's guilt of voluntary manslaughter and explained that his allegations of counsel error fail as a matter law under the second prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because even if the appellant's counsel's performance was deficient, there was not "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." 466 U.S. at 694, 104 S.Ct. 2052.

The appellant's brief lacks *any* discussion as to any specific way these alleged errors would or even could have led to a different result in this case. Upon reviewing the totality of the record before us, we believe that the circuit court correctly denied habeas relief based upon the claim of ineffective assistance of counsel and that the appellant simply was not able to meet the requirements of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, there was no merit to the appellant's argument and an evidentiary hearing was not necessary.

Based upon all of the above, as well as our thorough review of the record, we affirm the circuit court's order.

## IV.

## CONCLUSION

Accordingly, for the reasons stated above, the final order of the Circuit Court of McDowell County entered on September 25, 2006, is affirmed.

Affirmed.