**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **R.M., W.M., and E.M.**

**No. 19-1096** (Mercer County 18-JA-249-MW, 18-JA-250-MW, and 18-JA-251-MW)

**MEMORANDUM DECISION**

Petitioner Mother C.M., by counsel Thomas Janutolo, appeals the Circuit Court of Mercer County's November 4, 2019, order terminating her parental rights to R.M., W.M., and E.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Andrea Powell, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights by "allowing the introduction of the autopsy report without [establishing a] foundation and denying petitioner her right to confront the medical examiner who was the primary witness against her."

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2018, the DHHR filed a child abuse and neglect petition against petitioner after she brought then-one-year-old J.M. to the emergency room. The child showed signs of severe dehydration and malnourishment and was in critical condition. The DHHR was contacted, and two workers went to the hospital to investigate. Due to his severe condition, the child was to be transported to another hospital but died before being placed in the helicopter. The DHHR workers and law enforcement then investigated petitioner's home and discovered it to be filthy with unfit living conditions, including an infestation of cockroaches, fleas, and spiders. The remaining three children, R.M., W.M., and E.M., were found dirty, covered in urine and bug bites, malnourished,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

and with shaved heads due to lice. The DHHR filed an amended petition in January of 2019, naming other relatives as respondents and alleging that J.M. had been born at home in North Carolina, the family moved to West Virginia over one year prior, and the children had not seen a pediatrician during that time. Also, J.M.'s critical condition resulted from chronic dehydration and malnutrition, and his computed tomography scan showed evidence of an "askemic infarction" in his brain indicating possible abuse by shaken baby syndrome. Further, after the three siblings were placed in foster care and received medical care, R.M. was diagnosed with strep throat, E.M. had marks indicative of belt strikes, and R.M. and W.M. had difficulty walking and eating due to their malnutrition. No child weighed more than thirty-six pounds, despite the oldest child being five years old. During interviews, the children reported relieving themselves in their bedrooms because they were not allowed to leave their rooms and that they were beaten and whipped with objects for attempting to get food. Finally, the DHHR learned that the parents had extensive Child Protective Services ("CPS") histories in Tennessee and North Carolina where the children had been removed from the parents' care for nutritional neglect, physical abuse, environmental neglect, medical neglect, and inadequate supervision but were ultimately returned to their custody. Thereafter, petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in April of 2019, wherein the maternal aunt and uncle, previously named as respondents, voluntarily relinquished their custodial rights to the children and were dismissed as parties. The circuit court then continued the adjudication of the parents to allow time to review J.M.'s autopsy report and to depose the medical examiner and author of the report who had moved out of state. In July of 2019, the State gave formal notice of its intent to introduce the certified copy of J.M.'s autopsy report as evidence at the adjudicatory hearing and petitioner responded.

In August of 2019, the circuit court held an adjudicatory hearing wherein the DHHR presented the testimony of two workers, a forensic interviewer, and an investigating officer. The DHHR workers and the investigating officer testified to the conditions of the home, the three remaining children, and J.M. on the day of his death. When the DHHR moved to introduce the autopsy report through the investigating officer, petitioner objected, arguing that because the officer did not author the report, he was an improper witness to introduce and authenticate it. The circuit court overruled petitioner's objection and allowed the officer to testify that J.M.'s autopsy report determined that the cause of death was homicide. The circuit court adjudicated petitioner as an abusing parent.

In October of 2019, the circuit court held a final dispositional hearing, during which the DHHR moved to terminate petitioner's parental rights. The circuit court took judicial notice of all previous evidence presented, including the evidence of severe abuse and neglect presented at the adjudicatory hearing. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. The circuit court entered an order reflecting its decision on November 4, 2019.[2] Petitioner appeals this final dispositional order.

---

[2]The father's parental rights were also terminated below. According to respondents, the children were placed with a foster family, and the permanency plan is for the children to be adopted by that family.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues that the circuit court erred in terminating her parental rights by allowing the introduction of the autopsy report without establishing a foundation and by denying her the right to confront the medical examiner who was the primary witness against her. According to petitioner, the bulk of the DHHR's evidence was the autopsy report. She argues that the circuit court "denied her due process in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States of America."

As this Court has recognized, "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 2, *State ex rel. Waldron v. Scott*, 222 W. Va. 122, 663 S.E.2d 576 (2008) (citations omitted). Here, it is unnecessary to address the issue of whether the autopsy report's admission was error and whether such error would constitute a violation of a constitutional right because any such error would be harmless. Given the overwhelming evidence of chronic and extreme abuse and neglect of the children that necessitated termination of petitioner's parental rights, it is clear that termination of petitioner's parental rights was appropriate absent the autopsy report at issue.

Although petitioner claims that the bulk of the DHHR's case was J.M.'s autopsy report, the record indicates otherwise. The DHHR provided evidence of the deplorable conditions of the home during the investigation of the welfare of J.M.'s older siblings. Specifically, petitioner's home was discovered to be filthy and completely unfit for living, including an infestation of cockroaches crawling on the walls, fleas on all surfaces, and spiders' webs accumulated throughout the home, including next to J.M.'s sleeping area. We further note the children's inexcusable physical conditions, as they smelled of urine and feces; had shaved heads due to a lice infestation; appeared severely emaciated and weak; had multiple bug bites; and were suffering from a plethora of medical ailments, including untreated strep throat. The children also exhibited signs of severe physical abuse, as evidenced by belt marks on one child and their disclosures to the forensic interviewer that they were beaten and whipped with objects for getting food from the refrigerator

at night. The two youngest children were so emaciated that they could barely eat or walk. The evidence further showed that the children were forced to relieve themselves in their bedrooms and were forced to stay in their rooms for long periods of time. Following J.M.'s death, each child weighed less than thirty-six pounds at the time of their doctor's visits—their first instance of medical care in over a year. Moreover, another DHHR worker and an investigating officer described J.M.'s condition on the day of his death. The worker described the child as being severely underweight, and the investigating officer described going to the hospital, observing J.M.'s body shortly after his death, and making notes in his report about the child's physical appearance. Based upon the foregoing, we find ample evidence of petitioner's abuse and neglect beyond J.M.'s autopsy report. Therefore, we find that petitioner is entitled to no relief.

We likewise find no error in the termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6) (2019),[3] circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. "'No reasonable likelihood that the conditions of neglect or abuse can be substantially corrected' means that based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(c) (2019). Further, West Virginia Code § 49-4-604(c)(5) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes one in which

> [t]he abusing parent . . . ha[s] repeatedly or seriously injured the child[ren] physically or emotionally, or have sexually abused or sexually exploited the child[ren], and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent . . . in fulfilling [her] responsibilities to the child[ren].

The record establishes that the children were chronically abused and neglected, in multiple states over many years. The DHHR presented evidence that the children were removed from petitioner's care in Tennessee and North Carolina for nutritional neglect, physical abuse, environmental neglect, medical neglect, and inadequate supervision—the same conditions of abuse and neglect in the case at bar. Clearly, the potential for further abuse and neglect was so great "as to preclude the use of resources to mitigate or resolve family problems." *Id.* The record also supports the termination of petitioner's parental rights as necessary for the children's welfare, as their very survival depended upon the DHHR's intervention. Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's parental rights was necessary for the children's welfare, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 4, 2019, order is hereby affirmed.

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison