**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.O., D.T., and E.C., Jr.**

**No. 22-933** (Ohio County CC-35-2021-JA-57, CC-35-2021-JA-58, and CC-35-2021-JA-60)

**MEMORANDUM DECISION**

Petitioner Grandfather D.L.[1] appeals the Circuit Court of Ohio County's December 2, 2022, order denying his motion to intervene, for temporary and permanent placement, and for visitation regarding the children, A.O., D.T., and E.C., Jr.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In May 2021, the DHS filed a petition alleging abuse and neglect by the mother of the children and each of their respective fathers. The mother's parental rights were terminated in December 2021, and each of the fathers' parental rights remain intact.[3] Petitioner is the maternal grandfather of the children, and, in January 2022, petitioner sent a self-represented letter to the

---

[1]Petitioner appears by counsel Amy Pigg Shafer. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee A. Niezgoda. Counsel Michael B. Baum appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3]According to respondents, the fathers of A.O. and D.T. are currently participating in an improvement period. The permanency plan for these children is reunification with their respective fathers or adoption by foster placement. The father of E.C. successfully completed an improvement period. This child was reunified with his father, and the two were dismissed from the proceeding.

circuit court seeking custody of the children. The court considered the letter to be a motion to intervene and set the matter for hearing.

Prior to the hearing, the guardian submitted a report noting that the children resided with the mother and the father of E.C. at the time the petition was filed. Several months prior, the children periodically resided with petitioner on a temporary basis while the mother was incarcerated. The guardian further indicated that during a forensic interview, the oldest child, A.O., disclosed physical and sexual abuse by petitioner. The child revealed that petitioner would pour hot sauce in his mouth and hit him with a belt as forms of punishment and that petitioner touched the child's penis and the child saw petitioner touch his own penis. The foster parents reported to the guardian that A.O. had nightmares of petitioner locking him in a dark basement and that one of the younger children, D.T., said petitioner "likes to tickle me down there" referring to her vagina. The youngest child, E.C., was too young to make any statements. When the petition was filed against the parents, the children were placed with the maternal great-grandmother, petitioner's mother, on the condition that petitioner would not have contact with the children based on A.O.'s disclosures in the forensic interview. Although petitioner was aware of this condition of placement, a DHS worker discovered him residing in the great-grandmother's home with the children. Upon learning that petitioner had had contact with the children, the DHS removed the children from the home. Petitioner attempted to interfere with removal by chasing the worker and the children out of the home and pulling D.T. from the vehicle.

Also prior to the hearing, the DHS filed "[DHS]'s Objection to Motion to Intervene, Obtain Placement, and for Visitation," which addressed each of petitioner's self-represented "motions" as interpreted by the DHS. Petitioner, through counsel, filed a response, addressing each of his motions and confirming that petitioner sought intervention, temporary and permanent placement, and visitation. Petitioner conceded that the request for permanent placement was not ripe as the children's fathers were at different stages in the proceedings and had not lost their parental rights; however, he asserted his wishes to be considered for permanent placement at the appropriate time.

At a hearing on petitioner's motion to intervene, for temporary and permanent placement, and for visitation held before Judge Jason Cuomo in April 2022, petitioner testified, claiming that the mother gave him custodial rights that he exercised continually from August 2018 until January 2021. Petitioner denied all claims of physical and sexual abuse, although he admitted to scaring the children with a belt and disciplining them using hot sauce. Regarding petitioner's criminal history, he admitted to two prior drug charges, but denied any domestic violence or sexual abuse charges and insisted that there were no current pending criminal matters against him. A police officer testified that after an investigation into the sexual abuse allegations against petitioner, no criminal charges resulted.

At the conclusion of the hearing, the circuit court interviewed the children in chambers. Although the children described petitioner as mean, the court found that the children were not afraid of him. The court then granted petitioner phone and video visitation. Following the April 2022 hearing, a DHS worker approached the judge about his ruling outside the courthouse, expressing disagreement with the granted visitation. Due to this interaction, counsel for the DHS requested that the judge recuse himself and reassign the case. The DHS expressed its need to call the worker as a witness and argued that the conversation between the judge and the worker would

interfere with the integrity of the proceeding. Despite petitioner's objection, Judge Cuomo recused himself, and the matter was reassigned to Judge Ronald Wilson for the remainder of the proceedings.

A second evidentiary hearing on petitioner's motion was held in September 2022, at which time the DHS presented its witnesses and evidence. A DHS worker testified that the DHS had considered petitioner as a placement option at the time the petition was filed against the parents; however, under the DHS placement policy, it was determined that petitioner would be an inappropriate placement option because of his extensive criminal history, which included charges for drugs, domestic violence, and sexual abuse. The DHS worker stated that petitioner lied about his criminal history on their self-disclosure statement, which dishonesty further confirmed he would be inappropriate for placement. Evidence revealed that at the time of the April 2022 hearing there was a warrant out for petitioner's arrest regarding a credit card fraud charge and his failure to appear at a hearing regarding the same. The evidence further showed petitioner's involvement in a domestic violence case in 2002 and a sexual abuse case in 1999. The DHS maintained concerns about petitioner because of the statements made by the children and because he resided in the great-grandmother's home despite the condition that he was to have no contact with the children. The children's foster placement testified about the children's behavior since being in their care. The foster father described instances in which he would change D.T.'s diaper and she would try to pull his hand down to her vaginal area and say, "papa tickles me here." The foster father further discussed A.O.'s fear of belts and reoccurring nightmares of being locked in a dark basement by petitioner. The children were enrolled in therapy and were making progress; however, the foster father stated that their behavior worsened after the video visits with petitioner. The court then proceeded to hear additional testimony by petitioner. Notably, he stated that if he were granted custody, he would allow the children to see their mother, whose parental rights were terminated, even though he believes "she is disturbed" and needs to be "on medicine." Following the hearing, the court ordered an investigation pursuant to West Virginia Code § 48-9-301(a), which grants courts discretion to "order a written investigation and report to assist it in determining any issue relevant to proceedings under this article." The investigator filed the report in November 2022.

The circuit court issued a final order in December 2022, denying petitioner's motions and prohibiting contact between him and the children. The court determined that petitioner was not a relative caregiver entitled to an opportunity to be heard in this matter. The court found that the DHS did consider petitioner for relative placement but determined he did not qualify under its policies. The court further found the evidence in the record did not support visitation and that it would not be in the children's best interests and would substantially interfere with a future parent-child relationship. It is from this order that petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner raises several assignments of error. First, petitioner argues that the circuit court erred in concluding that he was not a relative caregiver with a right to be heard under West Virginia Code § 49-4-601(h); *see also State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018) (permitting relative caregivers, among others, "a meaningful opportunity to be heard" under the "two-tiered framework" established by § 49-4-601(h)). Below, the court correctly found that petitioner did not

meet the definition of relative caregiver, as petitioner admitted that he was not a relative caregiver at the time the petition was filed. Indeed, the record shows that any care petitioner alleged that he provided occurred three months prior to the petition and was temporary and intermittent. Therefore, petitioner did not have a statutory right to be heard.

Next, petitioner argues that the circuit court erred in denying his requests for temporary and permanent placement of his grandchildren. Petitioner is correct that both West Virginia Code §§ 49-4-601a and 114(a)(3) provide preferences for placement with relatives and grandparents, respectively. However, petitioner would have this Court adhere to these preferences despite overwhelming evidence that petitioner presented a threat to the children's wellbeing. As the record shows, the DHS met its obligation to consider petitioner under these statutes until further inquiry revealed his criminal history, his dishonesty about the same, and the concerning disclosures by the children, including sexual abuse allegations. As we have explained, "[t]he [grandparent] preference is just that—a preference. It is not absolute . . . the child's best interest remains paramount." *In re K.E.*, 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). Simply stated, "[t]he grandparent preference must be considered in conjunction with our long standing jurisprudence that 'the primary goal in cases involving abuse and neglect . . . must be the health and welfare of the children.'" *In re Hunter H.*, 227 W. Va. 699, 703, 715 S.E.2d 397, 401 (2011) (citation omitted). The circuit court found that the DHS's determination that petitioner was unsuitable for placement was reasonable and consistent with the children's best interests. Upon our review of the record, we can discern no error in the circuit court's decision.

Petitioner additionally argues that the circuit court erred in denying his motion for grandparent visitation made pursuant to West Virginia Code § 48-10-301. However, such visitation is only appropriate when a court determines "that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship." *Id.* § 48-10-501. While petitioner attacks the court's findings in regard to the factors outlined in West Virginia Code § 48-10-502, it is unnecessary to undertake an analysis of these factors in light of the children's disclosures of petitioner's sexual and physical abuse. Because continued visits with petitioner clearly would not be in the children's best interests, we find no error by the circuit court.[4]

Lastly, petitioner argues that the circuit court erred when it reassigned the case to a new judge when the evidentiary hearing on petitioner's motions was incomplete and the previous judge had the opportunity to hear petitioner's testimony, observe his demeanor, and interview the children. However, we find no merit to this argument as it was within the circuit court judge's discretion to disqualify himself when his impartiality may be reasonably questioned. *See Patton v. Cnty. of Berkeley*, 242 W. Va. 315, 319, 835 S.E.2d 559, 563 (2019) ("The matter of judicial recusal and disqualification is a matter of discretion reposed solely in the presiding judge and the Chief Justice of this Court." (citation omitted)). Further, contrary to petitioner's argument, Judge

---

[4]To the extent petitioner argues that the circuit court erred by not holding a hearing on the DHS's motion to terminate the phone and video visitation, and by refusing to entertain testimony regarding the scope of video visitations, we find this issue moot as the DHS sought a ruling regarding temporary visits, and the court ultimately denied any permanent visitation based on the evidence presented.

Wilson reviewed the record of the first evidentiary hearing and heard further testimony of petitioner and could therefore observe petitioner's demeanor at the second evidentiary hearing. Therefore, there is no evidence of any prejudice to petitioner.[5]

Accordingly, for the foregoing reasons, we find no error in the decision of the circuit court, and its December 2, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: April 15, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISSENTING:**

Justice C. Haley Bunn

Bunn, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.

---

[5]Petitioner raises an additional assignment of error, arguing that the circuit court erred when it appointed an investigator to conduct a court-ordered investigation pursuant to West Virginia Code § 48-9-301 without further hearing to allow petitioner to cross-examine the investigator. As this Court has recognized, "[m]ost errors, including constitutional ones are subject to harmless error analysis." *State ex. Rel. Waldron v. Scott*, 222 W. Va. 122, 126, 663 S.E.2d 576, 580 (2008). Upon our review of the record, there is no question that any error alleged in this regard is harmless, as there is no evidence that the circuit court considered the investigator's report in reaching its final ruling.