**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **E.K., S.C., and R.K.**

**No. 24-63** (McDowell County CC-27-2022-JA-34, CC-27-2022-JA-35, and CC-27-2022-JA-36)

**MEMORANDUM DECISION**

Petitioner Mother O.K.[1] appeals the Circuit Court of McDowell County's January 10, 2024, order terminating her parental, custodial, and guardianship rights to E.K., S.C. and R.K., arguing that the court erred by adjudicating her of neglecting the children, terminating her improvement period, and terminating her parental, custodial, and guardianship rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In September 2022, the DHS filed a petition alleging that the petitioner prematurely gave birth to R.K. after being kicked in the back by the children's father. The hospital staff expressed concern as to the petitioner's parenting abilities, such as holding, feeding, and caring for the newborn child, in addition to concerns over her threats of self-harm. Further, the DHS alleged that the petitioner lacked adequate housing, as she lived in a storage building with no kitchen, running water, or bathroom and that she permitted E.K. and S.C. to live with their maternal grandparents in a similarly situated storage building beside the petitioner. According to the petition, then-two-year-old E.K. and then-eleven-month-old S.C. could not walk or talk. The petitioner reported that the maternal grandparents disallowed her from caring for E.K. and S.C. and subjected those two children to domestic violence. Shortly after the petition was filed, the circuit court granted the petitioner's motion for a preadjudicatory improvement period.

---

[1] The petitioner appears by counsel Stephanie A. Pfeifer. The West Virginia Department of Human Services appears by Attorney General John B. McCuskey and Assistant Attorney General Heather Olcott. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Michael P. Magann appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

At a January 2023 adjudicatory hearing, a Child Protective Services ("CPS") worker testified to the poor condition of the petitioner's residence, which she described as an "outbuilding." The worker explained that during supervised visits, the petitioner would call for help from supervisors and often put the children's diapers on backwards. The worker expressed concern that the petitioner was unable to supervise and provide for the needs of all three children at once. The worker further testified that the petitioner obtained her own apartment and was participating in services. The petitioner did not present any evidence or witnesses, but her counsel argued that, because the grandmother was the primary caretaker of E.K. and S.C. and "the exception that exists for domestic violence victims would cover [the petitioner]," the DHS failed to prove that the petitioner neglected the children. The petitioner's counsel acknowledged "some parenting deficiencies," but contended that those issues did not "rise to the level of neglect." In the resulting order, the court adjudicated the petitioner of neglecting the children due to her inadequate housing, "lack of necessary mental, emotional, psychological means and parental skills," and domestic violence in the home. The court also granted the petitioner's written motion for a post-adjudicatory improvement period, the terms of which included, among other things, supervised visits, parenting and adult life skills classes, and mental health treatment.

In March 2023, the court held a review hearing to discuss the petitioner's progress in her improvement period. A CPS worker testified that, despite her compliance, the petitioner struggled to comprehend parenting instruction and supervise all three children at once during visits. The worker noted that S.C. ingested a marker lid during a visit while the petitioner was not paying attention. A visitation supervisor testified that the petitioner struggled to change diapers correctly and provide appropriate food to each child during visits. A second visitation supervisor testified to an incident where S.C. ate crackers from the floor and choked, necessitating the visitation supervisor's intervention. The second visitation supervisor explained that the petitioner often struggled to feed the children appropriately, that E.K. had issues using the toilet for days after visits took place, and that the supervisor "never had to intervene this much in a visitation."

At a May 2023 review hearing, multiple service providers testified that the petitioner was still struggling to retain and consistently implement the parenting instruction provided to her, including appropriate hygiene, diapering, and supervision. Nonetheless, the court granted the petitioner an extension of her post-adjudicatory improvement period and noted that she was scheduled to be evaluated for autism spectrum disorder ("ASD"). At another review hearing held in July 2023, the CPS worker testified that the petitioner was not making progress and constantly required intervention from visitation supervisors to prevent the children from getting hurt. The worker further testified that the petitioner failed to submit to her scheduled ASD assessment, stopped going to counseling, and stopped taking her prescribed medication.

In July 2023, the DHS filed a motion to terminate the petitioner's improvement period because the petitioner expressed that she was no longer interested in complying with the DHS and the court, yelled and hung up the phone during a multidisciplinary treatment team meeting, and had not made improvements. At a hearing on the motion in August 2023, the court heard testimony that the petitioner had not made sufficient progress to care for the children independently. As such, the court terminated the petitioner's post-adjudicatory improvement period and set the matter for disposition. Thereafter, the petitioner filed a motion for a post-dispositional improvement period,

noting that she underwent testing for ASD. On November 27, 2023, the DHS filed a motion to terminate the petitioner's parental rights. The DHS indicated that the parties were recently made aware that the petitioner was diagnosed with ASD. At this time, the children had been in DHS custody for fourteen months. The petitioner objected to the DHS's motion, in part, upon allegations that it failed to make reasonable accommodations under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA").

At a December 27, 2023, dispositional hearing, a counselor who specialized in ASD testified that she diagnosed the petitioner with Level 1 ASD. The counselor explained that, in her professional opinion and despite the diagnosis, the petitioner could become an effective parent and shared her recommendations for supportive measures such as parenting classes, counseling, and an ASD support group. When asked if she had recommendations for changes as to the manner or delivery of services, the counselor testified that "if [the petitioner] need[ed] a little more understanding of something to do it in a gentle way to where it doesn't come across as getting on to her or making her feel like she's in trouble . . . [and] building rapport with her." The counselor opined that six months or slightly longer would be enough time for the petitioner to substantially improve. Upon being informed that the petitioner had already participated in services for over fifteen months, the counselor testified that she was concerned due to the lack of improvement. Next, the visitation supervisor testified that she was made aware at the outset of the case that the petitioner may suffer an intellectual disability and due to this, she would give the petitioner visual cues, exercise patience, and repeat herself often. However, the supervisor testified that the petitioner was not "able to master . . . or grasp the basics. Feeding the kids, diapering the kids, [and] maintain[ing] their safety." A CPS worker testified that the petitioner did not demonstrate improvement and there was no reasonable likelihood that she could correct her parenting deficiencies. At the conclusion of the hearing, the court acknowledged that the older two children were staying next door with the maternal grandparents when the petition was filed. However, the court explained that the petitioner was legally responsible for the children's supervision, and she permitted them to stay with the maternal grandparents. The court explained that service providers accommodated her very recent Level 1 ASD diagnosis even before that diagnosis was made. The court noted that it was satisfied with those accommodations which included, among other things, taking more time than usual, giving more simple instructions, and being patient with the petitioner. In the resulting order, the court found that, due to the petitioner's "inability to provide safe and consistent care" to the children, there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and the children's best interests necessitated termination. Ultimately, the court terminated the petitioner's parental, custodial, and guardianship rights to the three children. It is from the dispositional order that the petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court erred in adjudicating her of neglecting the children. In support of her argument, the petitioner first contends that she was a battered parent. A battered parent is one

---

[3] The court accepted the father's voluntary relinquishment of his parental rights. The permanency plan for the children is adoption in the current placement.

who has been adjudicated by the court to have not condoned the abuse or neglect and has not been able to stop the abuse or neglect of the child or children due to being the victim of domestic violence as defined by § 48-27-202 of this code, which was perpetrated by the same person or persons determined to have abused or neglected the child or children.

W. Va. Code § 49-1-201. Critical to this definition is the fact that the abuse or neglect must have been perpetrated by someone *other* than the parent and who has also abused the parent. Here, the petitioner was adjudicated upon *her own* conduct that resulted in the children's neglect, including her failure to provide adequate housing and lack of "necessary mental, emotional, psychological means and parental skills" that resulted in her neglecting the children's safety and health. *See id.* (defining "[n]eglected child" as one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care, or education"). To further support her argument, the petitioner next asserts that her adjudication as to E.K. and S.C. was erroneous because the grandmother exercised custody of those children.[4] However, the petitioner ignores her legal responsibility for the children's supervision. As discussed above, a neglected child includes one whose health is harmed or threatened by their parent's failure to supply the child with necessary supervision. *Id.* As such, the court did not err in failing to find that the petitioner was a battered parent or in adjudicating her of neglect.

Next, the petitioner argues that the circuit court erroneously granted the DHS's motion to terminate her post-adjudicatory improvement period. However, we have long held that "it is . . . within the court's discretion to terminate the improvement period . . . if the court is not satisfied that the [parent] is making the necessary progress." Syl. Pt. 2, in part, *In re Lacey P.*, 189 W. Va. 580, 433 S.E.2d 518 (1993). Further, "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *In re Cecil. T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (quoting Syl. Pt. 1, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). We further stressed that "this is particularly applicable to children under the age of three years" because of their heightened need for safety and stability. *Id.* Here, after nearly one year of services, the court terminated the petitioner's post-adjudicatory improvement period after hearing extensive testimony that the petitioner consistently failed to implement basic parenting skills and endangered the young children's welfare. Because the court found that the petitioner was not making the necessary

---

[4] The petitioner also argues that the court erred in granting the grandmother's motion to intervene, but the grandmother's custody of two of the children prior to the filing of the petition required that she be named as a party. *See* W. Va. Code § 49-4-601(b) (requiring that child abuse and neglect petitions "name as a party each parent, guardian, custodian, [or] person standing in loco parentis"); W. Va Code § 49-1-204 (defining a custodian as "a person who has or shares actual physical possession or care and custody of a child, regardless of whether that person has been granted custody of the child by any contract or agreement"). Thus, the petitioner is entitled to no relief in this regard.

4

progress to care for the children independently, it did not abuse its discretion in terminating the petitioner's post-adjudicatory improvement period.

Inasmuch as the petitioner argues that termination of her rights was erroneous and a less restrictive alternative was merited due to her ASD diagnosis, we disagree. "Termination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected" and when necessary for the welfare of the child. Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting *In re R.J.M.*, 164 W. Va. at 496, 266 S.E.2d at 114, Syl. Pt. 2). The court made these findings based upon extensive evidence that the petitioner was unable to gain the skills necessary to remedy the neglect for which she was adjudicated and provide the children with safe and consistent care. Moreover, the petitioner delayed receiving her ASD diagnosis to the extent that the parties were not provided with the information until shortly before disposition.[5] Thus, the circuit court did not abuse its discretion in terminating the petitioner's parental rights and she is entitled to no relief.

Finally, the petitioner argues that the DHS failed to make reasonable accommodations as required by the ADA because each service provider admitted that they did not have specialized training in providing services to parents with ASD.[6] However, service providers testified that they tailored their curriculum in an effort to further assist the petitioner by being patient, repeating themselves, using visual demonstrations, and allowing the petitioner additional time. Accordingly, the circuit court found that the DHS made reasonable accommodations even in the absence of her ASD diagnosis at the outset of the case and despite her delay in getting that diagnosis. The court found that the providers made special accommodations by taking more time, giving instructions more simply, and providing additional services that normally are not available. Moreover, the petitioner fails to identify what accommodations she desired or how the accommodations made by the DHS were insufficient and, instead, merely asserts that the DHS made "no efforts" to accommodate her disability, which is simply untrue when examining the record. The petitioner baldly asserts that because the service providers did not have "specialized training" for parents

---

[5] Given that we perceive no error in the court's termination of the petitioner's parental rights, its is unnecessary to address the petitioner's specific arguments as to what would have been appropriate pursuant to West Virginia Code § 49-4-604(c)(5).

[6] In support of her argument, the petitioner cites to *In re B.W.*, 244 W. Va. 535, 854 S.E.2d 897 (2021). However, her reliance on that case is misplaced because in that case, the circuit court imposed disposition pursuant to West Virginia Code § 49-4-604(c)(5), which is not the case here.

The petitioner also argues that the circuit court erred by finding that "there is no evidence presented establishing [the petitioner] suffers from a disability covered under [the] ADA." However, the petitioner fails to explain how this finding harmed or prejudiced her in any way other than stating that the finding was simply incorrect. Because "[m]ost errors, including constitutional ones are subject to harmless error analysis," and the petitioner fails to explain how she was harmed or prejudiced by this finding, she is entitled to no relief in this regard. *State ex rel. Waldron v. Scott*, 222 W. Va. 122, 126, 663 S.E.2d 576, 580 (2008) (internal quotations and citation omitted).

with ASD, the accommodations were not ADA compliant. Yet, the petitioner cites to no authority requiring the DHS to provide specialized training for ASD. The court did not abuse its discretion in finding that the DHS made reasonable accommodations, and the petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 10, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: June 26, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV