**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**June 25, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **R.M., W.M., and E.M.**

**No. 19-1121** (Mercer County 18-JA-249-MW, 18-JA-250-MW, and 18-JA-251-MW)

**MEMORANDUM DECISION**

Petitioner Father C.M., by counsel John G. Byrd, appeals the Circuit Court of Mercer County's November 4, 2019, order terminating his parental rights to R.M., W.M., and E.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response and an amended response in support of the circuit court's order, as well as a supplemental appendix. The guardian ad litem, Andrea Powell, filed a response on behalf of the children in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in terminating his parental rights by (1) "shift[ing] the burden of proof to petitioner when it terminated [his parental rights] . . . during the adjudication," (2) denying him a meaningful dispositional hearing, (3) terminating his parental rights at the adjudicatory hearing without allowing him the opportunity to request an improvement period,[2] (4) denying him the ability to cross-examine certain witnesses, and (5) failing to apply any standard of proof during the adjudicatory and dispositional hearings.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Within this same assignment of error, petitioner confusingly asserts that

upon prompting by the State, the [c]ircuit [c]ourt stated that the hearing wherein he terminated . . . petitioner's rights was merely an adjudication and set the matter for termination. However, the [c]ircuit [c]ourt ruled at the behest of the State that no improvement period was granted without any input from petitioner's counsel.

1

a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2018, the DHHR filed a child abuse and neglect petition against the parents after the mother brought then-one-year-old J.M. to the emergency room. The child showed signs of severe dehydration and malnourishment and was in critical condition. The DHHR was contacted, and two workers went to the hospital to investigate. Due to his severe condition, the child was to be transported to another hospital but died before being placed in the helicopter. Thereafter, the investigating officer and the chief investigator for the medical examiner's office performed a physical examination of the child at the hospital. Later, the DHHR workers and law enforcement officers investigated petitioner's home and discovered it to be filthy with unfit living conditions, including an infestation of cockroaches, fleas, and spiders. The remaining three children, R.M., W.M., and E.M., were found dirty, covered in urine and bug bites, malnourished, and with shaved heads due to lice. The DHHR filed an amended petition in January of 2019, naming other relatives as respondents and alleging that J.M. had been born at home in North Carolina, the family moved to West Virginia over one year prior, and the children had not seen a pediatrician during that time. Also, J.M.'s critical condition resulted from chronic dehydration and malnutrition and his computed tomography scan showed evidence of an "askemic infarction" in his brain indicating possible abuse consistent with shaken baby syndrome. Further, after the three siblings were placed in foster care and received medical care, R.M. was diagnosed with strep throat, E.M. had marks indicative of belt strikes, and R.M. and W.M. had difficulty walking and eating due to their malnutrition. No child weighed more than thirty-six pounds, despite the oldest child being five years old. During interviews, the children reported relieving themselves in their bedrooms because they were not allowed to leave and that they were beaten and whipped with objects for attempting to get more food. Finally, the DHHR learned that the parents had extensive Child Protective Services ("CPS") histories in Tennessee and North Carolina where the children had been removed from their care for nutritional neglect, physical abuse, environmental neglect, medical neglect, and inadequate supervision but were ultimately returned to the parents' custody. Thereafter, petitioner waived his preliminary hearing.

The circuit court held an adjudicatory hearing in April of 2019, wherein the maternal aunt and uncle, previously named as respondents, voluntarily relinquished their custodial rights to the children and were dismissed as parties. The circuit court then continued the adjudication of the parents to allow time to review J.M.'s autopsy report and depose the medical examiner and author of the report who had moved out of state. In July of 2019, the State gave formal notice of its intent to introduce the certified copy of J.M.'s autopsy report as evidence at the adjudicatory hearing and petitioner responded.

In August of 2019, the circuit court held an adjudicatory hearing. The DHHR presented the testimony of two CPS workers who explained that they previously dealt with the parents in 2017 concerning the children's lack of medical care. They also described the deplorable conditions of the home and the children when they investigated the allegations in the instant petition. A forensic interviewer also testified regarding the three older children's statements. Further, the DHHR presented the testimony of the investigating officer who authored a report that included observations of the three older children and the home, as well as interviews with the parents. The DHHR moved to introduce the autopsy report through the investigating officer because he

performed the initial physical examination alongside the chief investigator of the medical examiner's office immediately after the child's death and had interviewed other medical experts such as pathologists and pediatricians regarding J.M.'s stunted growth and low weight. However, petitioner objected, arguing that the investigating officer lacked any medical training or other qualifications to testify regarding the autopsy report. He further argued that the officer did not author the autopsy report. The circuit court overruled petitioner's objections and allowed the officer to testify that J.M.'s autopsy report determined that the cause of death was homicide. The parents then offered testimony. At the conclusion of the evidence, the DHHR moved the circuit court to find aggravated circumstances due to the parents' neglect causing the death of J.M. The circuit court's ruling was as follows:

> [The Court]: Alright. . . . I do find aggravated circumstances due to the torture and chronic abuse of [J.M.] resulting in his death and therefore, the parental rights, custodial rights and guardianship rights are terminated.

> [The DHHR]: Your Honor, probably just procedural wise, it would probably just be an adjudication at this point and we would set it down for a Motion to Terminate and then there would not be an improvement period.

> [The Court]: So ordered.

Petitioner did not object to the circuit court's ruling adjudicating him nor did he move for an improvement period when the circuit court asked if there were any further issues that needed to be addressed.

In October of 2019, the circuit court held a final dispositional hearing, during which the DHHR moved to terminate petitioner's parental rights. The parents presented no evidence. The circuit court took judicial notice of all previous evidence presented, including the evidence of severe abuse and neglect presented at the adjudicatory hearing. The circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. The circuit court entered an order reflecting its decision on November 4, 2019.[3] Petitioner appeals this final dispositional order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

---

[3]The mother's parental rights were also terminated below. According to respondents, the children were placed with a foster family, and the permanency plan is for the children to be adopted by that family.

3

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights by "shift[ing] the burden of proof to petitioner when it terminated [his parental rights] . . . during the adjudication." He further argues that he was denied a meaningful dispositional hearing and was not allowed the opportunity to request an improvement period. We disagree.

These three assignments of error are premised upon petitioner's confusing rendition of the record, specifically that his parental rights were improperly terminated at adjudication. However, within petitioner's own assignment of error, he concedes that after the State informed the circuit court that the hearing at issue was in regard to adjudication only, the circuit court agreed that termination at that stage was inappropriate and set the matter for a later dispositional hearing. While it is true that the circuit court indicated from the bench at the adjudicatory hearing that petitioner's parental rights were terminated, the record shows that it immediately corrected its statements, adjudicated petitioner, and set the matter for disposition. Most importantly, the circuit court's adjudicatory order adjudicates petitioner as an abusing parent by finding that the children were abused and neglected children. However, the order does not terminate petitioner's parental rights. In his brief on appeal, petitioner repeatedly asserts that the circuit court never reversed the oral termination of his rights, but the record does not support this assertion. As such, petitioner's contention that his parental rights were improperly terminated at adjudication lacks any support in the record and any argument predicated upon this erroneous assertion entitles him to no relief.

Moreover, petitioner's argument regarding burden shifting is wholly without merit. Petitioner claims that he was forced to "change the [c]ircuit [c]ourt's mind" about terminating his parental rights at the dispositional hearing because it had "already decided to terminate them." However, a review of the record indicates that the circuit court made no such remarks or findings at the dispositional hearing and allowed petitioner a full opportunity to respond to the DHHR's motion to terminate his parental rights. For these same reasons, petitioner's contention that he was denied a meaningful dispositional hearing is also without merit. West Virginia Code § 49-4-601(h) provides that "[i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." Petitioner had counsel throughout the proceedings, including at the final dispositional hearing, who cross-examined witnesses, made arguments, and lodged objections. Further, petitioner had the opportunity to present witnesses and other evidence at the dispositional hearing but chose not to do so. Accordingly, we find that petitioner is entitled to no relief upon these grounds.

Regarding petitioner's improvement period, nothing in the record indicates, nor does petitioner argue, that he complied with West Virginia Code § 49-4-610(2)(A), which requires a

4

parent to file a written motion requesting a post-adjudicatory improvement period in order to receive the same. Petitioner failed to file the required motion, object to the circuit court's ruling at adjudication, or orally move for an improvement period at the adjudicatory hearing. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Accordingly, we find that petitioner is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred by denying him the ability to cross-examine certain witnesses, specifically the medical examiner who authored the admitted autopsy report, in violation of West Virginia Code § 49-4-601(h).[4] It is unnecessary to resolve the issue of whether petitioner's inability to cross-examine the author of the autopsy report, who was not called as a witness below, constitutes a violation of this statute, however, because any such error would be harmless. As this Court has recognized, "[f]ailure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 2, *State ex rel. Waldron v. Scott*, 222 W. Va. 122, 663 S.E.2d 576 (2008) (citations omitted). Given the overwhelming evidence of chronic and extreme abuse and neglect of the children that necessitated termination of petitioner's parental rights, it is clear petitioner was not prejudiced by his inability to cross-examine the witness in question, who provided no testimony below.

As set forth above, there was overwhelming evidence that petitioner's abhorrent actions resulted in the gross neglect and severe abuse of the other children, as the DHHR provided evidence of the deplorable conditions of the home during the investigation of the welfare of J.M.'s older siblings. Specifically, petitioner's home was found to be filthy and completely unfit for living, including an apparent infestation of cockroaches crawling on the walls, fleas on all surfaces, and spiders' webs accumulated throughout the home, including next to J.M.'s sleeping area. We further note the children's inexcusable physical conditions, as they smelled of urine and feces; had shaved heads due to a lice infestation; appeared severely emaciated and weak; had multiple bug bites; and suffered from a plethora of medical ailments, including untreated strep throat. The children exhibited signs of severe physical abuse as evidenced by belt marks on one child, and the children's disclosures to the forensic interviewer that they had been beaten and whipped with objects for getting food from the refrigerator at night. The two youngest children were so emaciated that they could barely eat or walk. The evidence also showed that the children were forced to relieve themselves in their bedrooms and stay in their rooms for long periods of time. Following J.M.'s death, all three children weighed less than thirty-six pounds at the time of their doctor's visits—their first instance of medical care in over a year. Moreover, another DHHR worker and an investigating officer described J.M.'s condition the day of his death. The worker described the child as being severely underweight, and the investigating officer described going to the hospital, observing J.M.'s body shortly after his death, and noting J.M.'s physical condition in his report. Based upon the foregoing, we find ample evidence of petitioner's abuse and neglect such that any

---

[4]West Virginia Code § 49-4-601(h) provides, in pertinent part, "*Right to be heard.* -- In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and *cross-examine witnesses*." (Emphasis added).

alleged error in regard to petitioner's inability to cross-examine the author of the autopsy report, who did not testify below, was harmless.

We similarly find no error in regard to petitioner's assertion that he was improperly denied the ability to cross-examine a "key witness," the investigating officer. Specifically, petitioner argues that the circuit court improperly sustained an objection during his cross-examination of this witness as he only asked questions that related to the officer's direct examination testimony.

To begin, the following standard governs circuit court's evidentiary rulings:

> "The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard." Syl. Pt. 1, in part, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995).

Syl. Pt. 3, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014). According to the record, petitioner indeed questioned the officer about testimony from his direct examination, including questions about the officer's report that included his observations of the child's dead body. It was only after petitioner asked, "Do you know why they put a trache in him?" that other counsel objected on the basis that petitioner was eliciting a medical opinion. The circuit court sustained the objection. On direct examination, the officer did not discuss any medical opinions concerning the child's tracheotomy, and only noted that he observed that the child had an "endotracheal tube . . . with a strap securing it in place." On appeal, petitioner argues that he had other questions he wanted to ask, such as what the officer meant when he noted that the child's skull was "unremarkable" in his report. However, we find that the circuit court appropriately sustaining the objection to the officer's inability to render a medical opinion in regard to this lone question did not prevent petitioner from asking further questions. There is simply nothing in the record to indicate that the circuit court improperly limited petitioner's ability to cross-examine this witness. Therefore, we find petitioner's argument is without merit.

Petitioner's remaining assignment of error concerns the circuit court's alleged failure to apply a standard of proof during the adjudicatory hearing. According to petitioner, the circuit court "did not articulate any standard whatsoever" when it adjudicated him as an abusing parent and terminated his parental rights. We find petitioner's argument to be without merit.[5]

In his brief, petitioner cites a plethora of cases from the Supreme Court of the United States for his argument that the standard of proof to be applied in matters wherein a parent's parental

---

[5]Although petitioner's assignment of error alleges that the circuit court erred in failing to apply a specific standard of review at adjudication and disposition, petitioner's argument in support of this assignment of error abandons any argument concerning the circuit court's failure to apply the clear and convincing standard when it terminated his parental rights at the dispositional hearing. Because of petitioner's failure to provide any argument in support of his assertion that the circuit court failed to hold the DHHR to the applicable burden of proof at disposition, we will not address that argument here.

rights are terminated must be clear and convincing. However, petitioner fails to cite West Virginia's statute designating such standard in child abuse and neglect proceedings. West Virginia Code § 49-4-601(i) provides:

> *Findings of the court*. -- Where relevant, the court shall consider the efforts of the department to remedy the alleged circumstances. At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court. *The findings must be* based upon conditions existing at the time of the filing of the petition and *proven by clear and convincing evidence*.

(Emphasis added). Therefore, West Virginia complies with the authorities cited by petitioner. Here, the circuit court was under no duty to articulate on the record that it was applying this evidentiary standard, and petitioner cites no evidence that the circuit court, in fact, deviated from it in any way.

Petitioner further argues that the circuit court failed to apply West Virginia Code § 49-4-610(2)(B), which provides that the circuit court may grant a post-adjudicatory improvement period if "[t]he [the parent] demonstrates, by clear and convincing evidence, that [he] is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period." As previously discussed, petitioner failed to file the required written motion requesting a post-adjudicatory improvement period upon which the circuit court would have held a hearing, failed to object at the adjudicatory hearing when the circuit court set the matter for disposition, and failed to orally move for an improvement period when the circuit court opened the floor for motions at the conclusion of the adjudicatory hearing. Accordingly, we find that petitioner is entitled to no relief in this regard.

Finally, we find no error in the termination of petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6) (2019),[6] circuit courts are directed to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. "'No reasonable likelihood that the conditions of neglect or abuse can be substantially corrected' means that based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(c) (2019). Further, West Virginia Code § 49-4-604(c)(5) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes one in which

> [t]he abusing parent . . . ha[s] repeatedly or seriously injured the child[ren] physically or emotionally, or have sexually abused or sexually exploited the child[ren], and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family

---

[6]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

problems, or assist the abusing parent . . . in fulfilling [his] responsibilities to the child[ren].

The record establishes that the children were chronically abused and neglected in multiple states over many years. The DHHR presented evidence that the children were removed from petitioner's care in Tennessee and North Carolina for nutritional neglect, physical abuse, environmental neglect, medical neglect, and inadequate supervision—the same conditions of abuse and neglect in the case at bar. Clearly, the potential for further abuse and neglect was so great "as to preclude the use of resources to mitigate or resolve family problems." *Id.* The record also supports the termination of petitioner's parental rights as necessary for the children's welfare, as their very survival depended upon the DHHR's intervention. Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and termination of petitioner's parental rights was necessary for the children's welfare, we find no error in the circuit court's decision to terminate petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 25, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

8