**FILED**
**February 1, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **N.G. and B.G.**

**No. 21-0586** (Kanawha County 20-JA-456 and 20-JA-496)

**MEMORANDUM DECISION**

Petitioner Father T.G., by counsel Rebecca Strollar Johnson, appeals the Circuit Court of Kanawha County's June 14, 2021, order terminating his parental rights to N.G. and B.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James W. Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Timbera C. Wilcox ("guardian"), filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court's adjudicatory order was not supported by the evidence; it erred in denying his motion for an improvement period; it erred in finding that termination was the least restrictive dispositional alternative; and it erred by relying on the guardian's recommendations.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner "whipped" then-three-year-old N.G., causing that child "severe bruising." The DHHR alleged that N.G.'s mother, J.R., stated that petitioner had "hit her before" and threatened her. J.R. filed a petition for a domestic violence protective order ("DVPO") against petitioner in August of 2020. The DHHR also alleged that petitioner was a participant in a family court proceeding earlier in August of 2020 and "lied under oath" regarding the location of B.G. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

judge presiding over that proceeding contacted law enforcement and, after an hour of searching, the police located petitioner and B.G. at the home of J.R. During this hour-long search, petitioner sent "threatening, angry text [messages] to" B.G.'s mother, E.S. E.S. filed a petition for a DVPO against petitioner two days later. Finally, the DHHR alleged that a third-party to the proceedings filed a petition for a DVPO against petitioner in early September of 2020.

The circuit court held a preliminary hearing in November of 2020. Petitioner waived his preliminary hearing. The circuit court heard testimony from the investigating Child Protective Services ("CPS") worker that petitioner admitted to spanking N.G. Petitioner also admitted to spanking the child too hard and that he was aware of the bruising he caused on N.G. Petitioner moved for visitation with the children, asserting that the most recent DVPOs had been dismissed. The mother of B.G. explained that her DVPO against petitioner was still active and prohibited petitioner from contact with B.G. Accordingly, the circuit court denied petitioner's motion. The court also ordered petitioner to participate in a parental fitness evaluation and announced the date of the adjudicatory hearing on the record.

In December of 2020, the circuit court held an adjudicatory hearing. Petitioner failed to appear, but he was represented by counsel. The CPS worker reiterated her prior testimony that petitioner admitted to bruising N.G. The CPS worker also testified that petitioner tested positive for controlled substances during the family court proceedings in August of 2020 but admitted that she did not know for which substances petitioner tested positive. The CPS worker testified that she interviewed N.G.'s mother, who disclosed that petitioner had "pushed her and slapped her in the face" on multiple occasions. According to the CPS worker, N.G.'s mother stated that she was fearful of petitioner. Petitioner presented no evidence. Ultimately, the circuit court found that petitioner subjected N.G.'s mother to domestic violence, severely bruised N.G., and threatened B.G.'s mother, as alleged in the petition. The circuit court also found that petitioner tested positive for opiates, extended opiates, and marijuana. The circuit court adjudicated him as an abusing parent and the children as abused children.

The circuit court held a hearing in March of 2021. Petitioner appeared in person and by counsel. The parties moved to continue the hearing, as petitioner's psychological evaluation report had not been completed. The circuit court continued the hearing without objection and announced a new hearing date on the record.

Petitioner's parental fitness evaluation report was completed later in March of 2021. During that interview, petitioner denied that he engaged in domestic violence with the children's mothers. Petitioner apparently believed that N.G.'s mother told the CPS worker that he hit her because "if she did [not], [CPS was] going to take her kid." Petitioner also denied that he bruised N.G., asserting that he was traveling a week prior to the alleged incident. Petitioner believed that if he had left a bruise, "it would [have] been cleared up by the time [he] got back [to West Virginia]." He also asserted "that if he whipped [N.G.] and caused the bruises, he would come forward and say he did it." Petitioner concluded his statements on the allegations by stating "I have [not] done anything that [was] abuse and neglect, and if I did, I would [not] continue it."

During the evaluation, petitioner admitted to "misusing" Promethazine and Codeine, which he had been prescribed for pain following a car accident in 2018. Petitioner asserted that

he discontinued opioid use after he tested positive for those substances in August of 2020. The evaluator noted that "[w]hen evaluating parental fitness, a number of factors are considered. Perhaps the most important of these is acceptance of responsibility as it tends to be predictive of an individual's motivation to make the necessary changes to their life to improve their parenting." The evaluator stated that petitioner "does not accept responsibility for the bruises observed on [N.G.]" and he was not "completely aware" that he did something abusive or neglectful. Finally, the evaluator concluded that, due to petitioner's failure to accept responsibility for the physical abuse suffered by N.G. or the domestic violence reported by his mother, petitioner's prognosis for improvement in his parenting was "extremely poor."

The circuit court held the final dispositional hearing in May of 2021. Petitioner did not appear, but counsel represented him. The DHHR moved to terminate petitioner's parental rights to the children. In support, a CPS worker testified that petitioner failed to acknowledge the conditions of abuse and neglect, as described above, and failed to remain in contact with the DHHR. Petitioner moved for a post-adjudicatory improvement period or, alternatively, post-termination visitation with the children. He presented no evidence.

Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that he had made no effort to rectify the circumstances that led to the filing of the petition. The circuit court also found that it was in the children's best interests to terminate petitioner's parental rights and that there was no less drastic alternative. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated his parental rights by its June 14, 2021, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The children's mothers were nonabusing parents below, and the children have achieved permanency in their respective custody.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues on appeal that the circuit court erred in finding that he tested positive for "opiates, extended opiates, and marijuana" in August of 2020, as alleged in the petition. He emphasizes that the testifying CPS worker stated that she was unaware of the specific substances for which petitioner tested positive in August of 2020 and was only aware that he tested positive for controlled substances. Petitioner further argues that this erroneous finding was later used against him to terminate his parental rights. We find petitioner is entitled to no relief in this regard.

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id*.

Here, the DHHR presented evidence that petitioner admitted to spanking N.G. and that he was aware of the bruising petitioner caused. The DHHR also presented evidence that the children's respective mothers petitioned for DVPOs against petitioner and reported to the CPS worker that petitioner committed acts of domestic violence against them. Notably, petitioner failed to rebut any of the evidence presented.[3]

---

[3]Petitioner also argues on appeal that the circuit court implemented a "call in" system for virtual hearings that was unduly burdensome. He asserts that he was unable to attend hearings due to counsel's failure to provide him information on how to attend such hearings or otherwise arranging his attendance for those hearings. However, there is nothing in the record to support his claim. The West Virginia Rules of Appellate Procedure require that

> [t]he brief must contain an argument exhibiting clearly the *points of* fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . [and] must contain appropriate and specific citations to the record on appeal . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

W. Va. R. App. P. 10(c)(7) (emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure,

(continued . . . )

4

Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Therefore, there was sufficient evidence for the circuit court to adjudicate petitioner as an abusing parent.[4] Notably, while petitioner asserts that the circuit court's finding regarding his positive drug screen result is erroneous, petitioner admitted to "misusing" Promethazine and Codeine during his parental fitness evaluation, stating that he discontinued opioid use after he tested positive for those substances in August of 2020. Furthermore, as more fully addressed herein, neither the DHHR nor the guardian focused on petitioner's alleged substance abuse as the most significant factor for the termination of his parental rights to the children. The most significant factor tending toward termination was petitioner's failure to acknowledge his abuse of N.G. and his failure to participate in these proceedings below.

Petitioner argues that the circuit court erred in denying his motion for an improvement period, which we find to be meritless. In order to be granted a post-adjudicatory improvement

---

the Court specifically noted that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal' as required by rule 10(c)(7)" are not in compliance with this Court's rules. In that order, the Court went on to instruct that "all of the requirements of the Rules must be strictly observed by litigants" because "[t]he Rules are not mere procedural niceties; they set forth a structured method to permit litigants and this Court to carefully review each case." Here, petitioner cannot cite to any points of fact to support this argument and, therefore, it is precluded from review.

The Court notes, however, that petitioner was properly provided notice of all of the hearings. *See* W. Va. Code § 49-4-601(e) (requiring "at least [ten] days' notice" of adjudicatory and dispositional hearings). Specifically, the date and time of the adjudicatory hearing, which petitioner did not attend, was provided during the preliminary hearing while petitioner was present. Likewise, the date and time of the dispositional hearing was provided during a hearing in March of 2021, where petitioner was in attendance. Accordingly, petitioner had actual notice of these hearings as required by statute.

[4]Assuming, arguendo, that the circuit court's finding regarding petitioner's positive drug screen result is erroneous, such error would be harmless because the evidence supports the circuit court's finding that petitioner physically abused N.G. and subjected the children's mothers to domestic violence. As this Court has recognized, "[m]ost errors, including constitutional ones are subject to harmless error analysis." *State ex. Rel. Waldron v. Scott*, 222 W. Va. 122, 126, 663 S.E.2d 576, 580 (2008).

5

period under West Virginia Code § 49-4-610(2)(B), the parent must first "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015); *see also In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely). Critically, petitioner failed to acknowledge the conditions of abuse and neglect. This Court has held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). The record shows that, during the parental fitness evaluation, petitioner denied that he had "done anything that [was] abuse and neglect." Petitioner excused the bruising on N.G., stating that any bruising he may have caused from spanking the child should have "cleared up" while he was out of state. Further, petitioner denied that he engaged in domestic violence with the children's mothers. In sum, petitioner failed to acknowledge or accept responsibility for the abuse and neglect that gave rise to the filing of the petition, and, therefore, an improvement period would be an exercise in futility. Petitioner's argument on appeal that, if granted an opportunity, he would have "acknowledged the need for services" is unavailing. Petitioner was granted an opportunity to acknowledge the conditions of abuse and neglect and, instead, denied them. Therefore, he is entitled to no relief in this regard.

Petitioner also argues that the circuit court erred in finding that termination of his parental rights was the least restrictive dispositional alternative. He asserts that the children could achieve permanency in their mothers' custody, regardless of whether the circuit court terminated his parental rights. In petitioner's view, he "is not a bad parent. He is an individual who loves his children and took appropriate care of them when given the chance." We find this argument unpersuasive.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Here, petitioner's failure to acknowledge the conditions of neglect and abuse is an insurmountable barrier to parental improvement. Consistent with our prior holdings, the circuit court was justified in finding that there was no reasonable likelihood that the conditions of neglect and

6

abuse could be substantially corrected based on petitioner's failure to acknowledge the conditions of abuse and neglect.

Furthermore, this Court has held

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, the circuit court had the discretion to terminate petitioner's parental rights, and we find no abuse of discretion in this instance. We also reject petitioner's argument that termination of his parental rights was unnecessary because the children achieved permanency in their mother's custody. We have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. We find no error in the circuit court's findings or ultimate decision upon our review.

Finally, petitioner argues that the circuit court erred in relying upon the recommendations of the guardian when the guardian failed to issue a dispositional report and failed to conduct an independent investigation. However, petitioner did not raise this issue below. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). We have explained that

[t]he rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made [. . . .] Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues [before this Court]. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

*In re E.B.*, 229 W. Va. 435, 468, 729 S.E.2d 270, 303 (2012) (quoting *Whitlow v. Bd. of Educ. of Kanawha Cnty.,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993). Rather than raise the issue before the circuit court and provide the guardian an opportunity to respond, petitioner now assumes on appeal that the guardian did not conduct an investigation and "simply reiterated what

was in the [DHHR's] [p]etition." Due to the insufficient record on this matter, we decline to address this assignment of error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 14, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton